

FILED by _____ KS ___ D.C.

**Apr 28, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NO. **22-20172-CR-WILLIAMS/MCALILEY**

**18 U.S.C. § 1343**
**18 U.S.C. § 1028A(a)(1)**
**18 U.S.C. § 1029(a)(2)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(2)(B)**

UNITED STATES OF AMERICA

v.

EDRISSE MICHELIN,

      Defendant.

_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Paycheck Protection Program

1.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide financial assistance to Americans suffering economic harm from the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2.     In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application

required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020. The business was also required to provide, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation of their payroll expenses.

3.     The CARES Act required PPP loan applications to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.

4.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### The Economic Injury Disaster Loan Program

5.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that existed before the COVID-19 pandemic to provide low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

2

6.    The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In order to obtain a COVID-19 EIDL, a qualifying business was required to submit an EIDL application to the SBA and provide information about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

7.    EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA.

### The Defendant and Related Entities

8.    Universal Marketing and Advertising Group Incorporated ("Universal Marketing") was a Florida corporation that was administratively dissolved on September 27, 2019.  Universal Marketing was reinstated on July 11, 2020.

9.    Z Noelle Corp d/b/a Bella Spa and Wellness was a Florida corporate that was created on December 17, 2019, and administratively dissolved on March 30, 2020.

10.    Defendant **EDRISSE MICHELIN**, a resident of Miami-Dade County, Florida, became the president and authorized representative of Universal Marketing on June 3, 2011, and became the president and authorized representative of Z Noelle Corp on March 30, 2020.

11.    Lender 1 was a private company based in Atlanta, Georgia and a participating lender of PPP funds.

3

12.     Bank 1 was a financial institution based in Virginia with branches located in Florida.

## COUNT 1-2
### Wire Fraud
### (U.S.C. § 1343)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From on or about June 11, 2020, through in or around July 7, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EDRISSE MICHELIN,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by submitting and causing the submission of a false and fraudulent PPP loan application and a false and fraudulent EIDL loan application to Lender 1 and the SBA, respectively, and then using the subsequent loan proceeds for his own personal use and benefit and to further the fraud.

## THE SCHEME AND ARTIFICE

The manner and means by which **EDRISSE MICHELIN** sought to accomplish the

4

purpose of the scheme and artifice included, among others, the following:

4. **EDRISSE MICHELIN** caused the submission, via interstate wire communications, of a false and fraudulent PPP loan application to Lender 1 for Universal Marketing and a false and fraudulent EIDL loan application to the SBA for Z Noelle Corp.

5. The PPP loan application falsely and fraudulently represented Universal Marketing's monthly payroll and gross income and included falsified tax forms.

6. The EIDL application falsely and fraudulently represented the gross revenues and the number of employees of Z Noelle Corp.

7. As a result of the false and fraudulent PPP loan application, Lender 1 deposited approximately $577,490 of loan proceeds into a bank account controlled by **EDRISSE MICHELIN**, which funds **MICHELIN** used for personal expenses. Likewise, as a result of the false and fraudulent EIDL loan application, the SBA deposited $29,400 into an account controlled by **MICHELIN,** which funds he also used for personal expenses.

## USE OF THE WIRES

On or about the dates specified below, in the Southern District of Florida, and elsewhere, **EDRISSE MICHELIN**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 1 | July 7, 2020 | A wire transfer in the amount of $577,490 from Lender 1 processed using servers outside the State of Florida into a Navy Federal Credit Union account ending in 1091 controlled by **EDRISSE MICHELIN** and located in the Southern District of Florida. |
| 2 | June 11, 2020 | A wire transfer in the amount of $29,400 from the SBA processed using servers outside the State of Florida into a Bank of America account ending in 0599 controlled by **EDRISSE MICHELIN** and located in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 3

**Use of One or More Unauthorized Access Devices
(18 U.S.C. § 1029(a)(2))**

From on or about June 10, 2020, through on or June 17, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EDRISSE MICHELIN,**

did knowingly, and with the intent to defraud, use one or more unauthorized access devices, that is, credit card numbers issued to other persons, during any one-year period, and by such conduct did obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of 18, United States Code, Section 1029(a)(2).

**COUNT 4**
**Aggravated Identity Theft**
**(18 U.S.C. § 1028A(a)(1))**

From on or about June 10, 2020, through on or about June 15, 2020, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**EDRISSE MICHELIN,**

during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(2), that is, knowingly, and with the intent to defraud, using one or more unauthorized access devices, credit card numbers issued to other persons, said conduct affecting interstate and foreign commerce, as charged in Count 3 of this Indictment, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, that is a J.C. Penny credit card number ending in 3290 issued in the name of B.J.

In violation of Title 18, United States Code, Section 1028A(a)(1).

**FORFEITURE ALLEGATIONS**

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **EDRISSE MICHELIN**, has an interest.

2.     Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense,  pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1029, as alleged in this Indictment, the defendant shall forfeit to the United States of America: (a) any property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of

7

such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(B); and (b) any personal property used, or intended to be used, to commit such offense, pursuant to Title 18, United States Code, Section 1029(c)(1)(C).

      4.    The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

      a.    one (1) 2017 White Land Rover Discovery, bearing Vehicle Identification Number SALRRBBK9HA043676;

      b.    one (1) 2019 Black Land Rover Discovery bearing Vehicle Identification Number SALRG2RV4KA094919; and

      c.    a sum of at least approximately $671,142.26 in U.S. currency, which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

      5.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without

difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(B), and 1029(c)(1)(C), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2).

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

STEPHEN J. DEMANOVICH
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Edrisse Michelin

**Case No**:

Count #: 1 and 2

Wire Fraud

Title 18 United States Code, Section 1343

**\* Max. Penalty**: 20 years' imprisonment

Count #: 3

Use of One or More Unauthorized Access Devices

Title 18 United States Code, Section 1029(a)(2)

**\*Max. Penalty:**  10 years' imprisonment

Count #: 4

Aggravated Identity Theft

Title 18 United States Code, Section 1028(a)(1)

**\*Max. Penalty:**  2 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA                    CASE NO. 2020R00214

v.

Edrisse Michelin,                           **CERTIFICATE OF TRIAL ATTORNEY***
                                            **Superseding Case Information:**

_____/
                Defendant.

Court Division: (Select One)                New defendant(s)    ☐ Yes   ☐ No
☑ Miami  ☐ Key West  ☐ FTL                  Number of new defendants   _____
☐ WPB    ☐ FTP                              Total number of counts    _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable
   witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in
   setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,

   Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  No_____

   List language and/or dialect  _____

4. This case will take  _0_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)
   I     0 to 5 days        ☑               Petty          ☐
   II    6 to 10 days       ☐               Minor          ☐
   III   11 to 20 days      ☐               Misdemeanor    ☐
   IV    21 to 60 days      ☐               Felony         ☑
   V     61 days and over   ☐

6. Has this case previously been filed in this District Court? (Yes or No)  No_____

   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No)  No_____

   If yes: Magistrate Case No. _____

   Related miscellaneous numbers: _____

   Defendant(s) in federal custody as of _____

   Defendant(s) in state custody as of _____

   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)  No_____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to
   August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No)  No_____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to
   August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No)  No_____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to
   October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No)  No_____

Stephen J. Demanovich
Assistant United States Attorney
FLA Bar No.        61120

*Penalty Sheet(s) attached                                              REV 3/19/21

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| Edrisse Michelin, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: ____04/29/2022____

Edrisse Michelin
*Defendant's signature*


*Signature of defendant's attorney*

Michael Mirer, Esq
*Printed name of defendant's attorney*


*Judge's signature*


*Judge's printed name and title*
